IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIRIAM HANZER, | : | |
| Plaintiff, | : | C.A. No.: 12-363-LPS-MPT |
| v. | : | |
| NATIONAL MENTOR HEALTHCARE, LLC d/b/a DELAWARE MENTOR, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

**I.** **Introduction**

This is an employment discrimination case. On July 26, 2011, Miriam Hanzer ("Hanzer") filed suit against National Mentor Healthcare, LLC d/b/a Delaware Mentor ("Mentor") alleging discrimination, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1] Hanzer later amended her complaint to add allegations Mentor violated the Delaware Whistleblowers' Act, 19 DEL. C. § 1701 *et seq.*[2] Currently before the court is Mentor's motion for summary judgment.[3]

**II.** **Background**

Unless otherwise noted, the following facts are uncontroverted by the parties. Mentor is a provider of residential and day services for adults with developmental disabilities.[4] Hanzer is Panamanian and may be characterized as Hispanic with a skin

---

[1] D.I. 1.
[2] D.I. 40.
[3] D.I. 101
[4] D.I. 102 at 2.

color of Mestizo.[5] She was employed with Mentor from June 2006 until March 4, 2010.[6] Initially, Hanzer was hired as direct care professional, but was promoted to House Manager of the Millsboro House in September 2006.[7] In her capacity as House Manager, she managed the staff of the house.[8] In November 2007, Hanzer was promoted to Case Manager and reported to Karen McGee ("McGee"), who may be characterized as Caucasian and American.[9] In addition to Hanzer, McGee likewise supervised Nancy Beil ("Beil"), the Assistant Program Manager who also is Caucasian.[10]

In her role as Case Manager, Hanzer created Essential Lifestyle Plans ("ELPs") for clients.[11] In addition, Hanzer reviewed Personal Spending Records ("PSRs") which accounted for spending from client accounts.[12] In November 2009, Hanzer alleges she noticed discrepancies in three PSRs for the Falcon Crest house and alerted McGee.[13] The PSRs were properly adjusted and the person found responsible was terminated.[14] However, Hanzer alleges McGee asked her to replenish the missing funds with her own money, which she refused.[15]

---

[5] *Id.* at 3.
[6] *Id.* at 2, 11.
[7] *Id.* at 2.
[8] *Id.*
[9] D.I. 108 at 2.
[10] *Id.* at 3-4.
[11] D.I. 102 at 3.
[12] *Id.*
[13] D.I. 108 at 3.
[14] *Id.* at 3-4. Hanzer admits the PSRs were adjusted and the State was aware of subsequent discrepancies. D.I. 103, Ex. E at 141-143.
[15] D.I. 108 at 3.

In December 2009, Mentor was placed on probation by the State due to systemic issues.[16] In response, Mentor sought to clarify job duties across the organization.[17] Mentor also hired a Quality Assurance person, Elizabeth Donaway ("Donaway") to audit the ELPs.[18] Donaway met with Hanzer and discussed deficiencies in the ELPs and means to improve content.[19] In January 2010, a complaint was made about Hanzer "overstepping her bounds" with a House Manager.[20] During this time, Hanzer also sent a complaint letter to McGee regarding issues with her interactions with staff contacting her for help and possibly overstepping her bounds.[21] In addition, McGee changed Hanzer's job duties and responsibilities during this time period.[22]

In early March 2010, Hanzer alleges she was berated for purchasing office supplies and was forced to use her own computer for work.[23] After an incident in which Hanzer was visibly upset, Hanzer met with Valery Bailey ("Bailey"), the Executive Director for Mentor, on March 4, 2010.[24] Hanzer and Bailey discussed the issues with office supplies, and the incident at the Millwood House in addition to her driving record.[25] Bailey informed Hanzer her job was being eliminated and she was being laid

---

[16] D.I. 102 at 6.
[17] D.I. 108 at 5.
[18] D.I. 102 at 7.
[19] *Id.*
[20] *Id.* at 8.
[21] D.I. 103, Ex. C.
[22] D.I. 102 at 7-8.
[23] D.I. 108 at 7.
[24] D.I. 102 at 10-11.
[25] *Id.* at 11.

off since changes were to occur to the position, including its title and the requirement of a college degree.[26]

After Hanzer's separation from Mentor, her position was filled by Lisa Wolfgang, a Caucasian American who possesses a college degree.[27] The second employee hired to the new position, two years after Wolfgang, was a woman named Davis, an African-American who lacked a college degree but had fifteen years of applicable work experience.[28]

### III. Discussion

#### A. Standard on Motion for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court is to enter summary judgment only when the record demonstrates there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the court's role is not to weigh the evidence or to decide the truth of the matters asserted, but to determine whether there is a genuine issue of fact for trial.[29] In so doing, the court must view all facts and draw all reasonable inferences in favor of the non-movant, take as true all allegations of the non-movant that conflict with those of the movant, and resolve all doubts against the non-movant.[30]

#### B. The *McDonnell Douglas* Standard

---

[26] D.I. 108 at 8.
[27] D.I. 103, Ex. I at 59-61.
[28] D.I. 102 at 12; D.I. 108 at 8; D.I. 103, Ex. I at 86-89.
[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[30] *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985).

Hanzer's discrimination and retaliation claims are analyzed under the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*.[31] The *McDonnell Douglas* analysis consists of three stages. First, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination or retaliation.[32] If a *prima facie* case is established, the burden the shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.[33] The burden returns to the plaintiff to show that the employer's stated reason for the employment action was pretextual.[34]

To establish a *prima facie* case of racial discrimination, a plaintiff must demonstrate: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action and circumstances support an inference of unlawful discrimination when a similarly situated person not of the class is treated differently.[35] To demonstrate pretext, the plaintiff must show a reasonable juror could either disbelieve the reasons articulated by the employer for termination or a discriminatory purpose was more likely than not the determinative cause for termination.[36]

Mentor has stipulated, for the purposes of its motion, that Hanzer has satisfied the first three prongs of the *prima facie* case. Mentor, however, maintains Hanzer is unable to establish even an inference that her adverse employment action was the

---

[31] 411 U.S. 792 (1973).
[32] *Id.* at 802.
[33] *Id.*
[34] *Id.* at 804.
[35] *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999).
[36] *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994).

result of racial animus.[37] Specifically, Mentor points out McGee's prior positive treatment of Hanzer, including promotions, and the changes to Hanzer's job functions coincide with Mentor's probationary status and remedial measures.[38] It also highlights Hanzer's deficient work which necessitated Donaway's guidance, as well as the incident where she became upset.[39] Given its probationary status, Mentor also addresses the need to eliminate Hanzer's job to create a new position that would enable it to meet the necessary State requirements.[40] Hanzer, however, counterargues there is a genuine issue of material fact as to whether her position was actually eliminated, and suggests an inference of discrimination based on her replacement's status outside her protected class, as well as the mockery of her pronunciation of the word "sheet."[41] Hanzer emphasizes Mentor initially replaced her with a Caucasian American, and subsequently with a person lacking the requisite college degree.[42] Hanzer likewise points out that Beil was similarly situated because McGee was also her supervisor, but was not subjected to a similar increase in workload after the PSR incident.[43] Hanzer also points to inconsistencies, in that Mentor indicated her termination was both based on her deficient work and the elimination of her position.[44]

Under the *McDonnell Douglas* framework, Hanzer must first establish the elements of a *prima facie* case of racial discrimination. Here, given that Mentor has

---

[37] D.I. 102 at 15.
[38] *Id.* at 14-15.
[39] *Id.* at 16.
[40] *Id.* at 17.
[41] D.I. 108 at 11.
[42] *Id.* at 12.
[43] *Id.* at 18.
[44] *Id.* at 16.

conceded the first three elements for purposes of this motion, Hanzer need only demonstrate an inference of unlawful discrimination. Hanzer correctly points out that the Third Circuit has held replacement by a member of another class is sufficient to support the fourth prong of the analysis and establish a *prima facie* case.[45] Hanzer's comparison of herself to Beil, however, is inapposite since they possessed different job titles and responsibilities. Viewing the facts in a light most favorable to Hanzer, the hiring of a member of another class to possibly replace her, satisfies the requirements for the *prima facie* case for purposes of the summary judgment analysis.

Although Hanzer has established a *prima facie* case, Mentor has met its burden to supply legitimate non-discriminatory reasons for her termination, specifically her job performance, the elimination of her position and the addition of a bachelor's degree requirement. Thus, the burden remains with Hanzer to demonstrate that the reasons are pretextual. However, Hanzer has failed to demonstrate inconsistencies of a nature to raise an inference of discriminatory intent. Hanzer has pointed to issues of whether the title of the position actually changed, based on Mentor's failure to change an organizational chart, and the hiring of a second replacement who lacked a college degree. An employer may have many reasons to separate from an employee, and all may be valid, especially when an organization is attempting to remedy probation. Further, Hanzer has not pointed to specific conduct from which a reasonable juror could find Mentor's reasons were pretextual. Although Mentor may have hired a person of another race to "replace" Hanzer, the position and qualification were different; it is

---

[45] *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 Fed. Appx. 239, 242 (3d Cir. 2007).

undisputed that her initial replacement had a college degree. As Mentor points out, four of five replacements had a college degree, and the one who did not had more experience. Such fractured evidence is insufficient to infer pretext.[46] Hanzer has not established adequate evidence for a reasonable juror to find either Mentor's proferred reasons false, or that invidious discrimination was the actual reason for Hanzer's termination. Thus, Hanzer's claim for discrimination under Title VII must fail.

    **C.**    **Hostile Work Environment**

To prevail on a claim for a hostile work environment, a plaintiff must demonstrate: (1) intentional discrimination on the basis of race; (2) the severe and pervasive nature of the discrimination; (3) the discrimination caused the plaintiff to suffer a detriment; (4) a person of the same race would likewise be affected in the same way; and (5) vicarious liability.[47] In determining whether the severe or pervasive element is satisfied, courts look to the totality of the circumstances, including such factors as the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.[48] Even a few incidents of mocking an employee's accent does not rise to the level of a severe or pervasive hostile work environment.[49]

---

[46] *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412-13 (3d Cir. 1999) (holding, in order to overcome summary judgment, a plaintiff must provide evidence from which a reasonable juror could disbelieve the employer's proffered legitimate reasons or believe, more likely than not, invidious discrimination was the reason for the adverse employment action).
[47] *Peace-Wickham v. Walls*, 409 Fed. Appx. 512, 518 (3d Cir. 2010).
[48] *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Nieves v. Acme Markets, Inc.*, 541 F. Supp. 2d 600, 606 (D. Del. 2008).
[49] *Dunlap v. Ks. Dept. of Health & Environ.*, 211 F. Supp. 2d 1334, 1341 (D. Kan. 2002) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

An employee's subjective belief she suffered severe or pervasive treatment, without more, is not enough to survive summary judgment.[50]

Mentor contends Hanzer is unable to demonstrate severe or pervasive discrimination and cannot tie her treatment to her protected status as required to establish a case for hostile work environment.[51] Mentor specifically points out that one documented instance of mocking an accent is insufficient, and that subjective belief is likewise insufficient.[52] Hanzer counters she was mocked more than once, although she cannot recall the other events and the degree to which her job responsibilities changed cannot be considered normal and was pervasive.[53] Specifically, Hanzer asserts her work responsibilities consistently changed and expanded and she was reprimanded for performing work she was specifically asked to perform previously.[54] For example, she complains of being asked to do a task and, while performing that task, being asked to perform another new task that was outside of her job description as well as having to work into the night to complete her new job duties.[55] In addition, she points to criticism

---

[50] *See Douglas v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996); *see also McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 436–37 (3d Cir. 2007) ("[T]o survive summary judgment, a party must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue.") (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)); *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1243 (3d Cir. 1989) ("[P]laintiff may not simply rest upon his bare allegations . . . rather, he must present 'significant probative evidence tending to support the complaint.'") (quoting *Anderson*, 477 U.S. at 249).
[51] D.I. 102 at 19-20.
[52] *Id.* at 20.
[53] D.I. 108 at 21.
[54] *Id.* at 18.
[55] *Id.*

for her language skills, despite no complaints for years, as evidence of a hostile work environment and discriminatory intent.[56]

Although Hanzer may subjectively believe that her treatment was discriminatory, she has not presented a genuine issue of fact to overcome summary judgment with respect to her hostile work environment claim. Even conceding the single incident of mocking, which is all that she can recount, is possibly based on a protected characteristic, it is too isolated to be severe or pervasive. Further, Hanzer's indication that her work changed and she was critiqued is consistent with an organization on probation attempting to remedy work issues and does not create any inference of discrimination even viewing the facts in a light most favorable to Hanzer.[57] It is not the role of the court to micromanage a business' decisions, instead the focus must be on whether there was a discriminatory animus motivating the employer.[58] As the court in *Peace-Wickham* held, changes in work responsibilities due to circumstances affecting the business, without a connection to racial animus, are not sufficient for a hostile work environment claim.[59] Here, as in *Peace-Wickham*, changes to Hanzer's responsibilities occurred during a time of organizational distress. This alone does not give rise to an inference that the changes were motivated by racial animus. Thus, Hanzer's claim for hostile work environment cannot survive summary judgment.

### D. Retaliation

---

[56] *Id.* at 21.
[57] *See McKinnon v. Gonzalez*, 642 F. Supp. 2d 410, 423 (D.N.J. 2009) (holding that micromanagement of an employee is not sufficient for a hostile environment claim even coupled with sporadic mocking).
[58] *See Fuentes*, 32 F.3d at 765.
[59] 409 Fed. Appx. at 520.

In order to establish a claim of retaliation under Title VII, a plaintiff must establish that: (1) she engaged in a protected activity under Title VII; (2) she suffered an adverse employment action after the protected activity; and (3) the employment action and protected activity are causally linked.[60] Protected activities under Title VII include formal and informal complaints of discrimination.[61] An inference of causation may arise if the action and protected activity are close in time, connected by an antagonistic pattern following the activity or from the totality of the circumstances.[62]

Mentor contends Hanzer's retaliation claim must fail since she did not engage in a protected activity under Title VII.[63] Referring to Hanzer's complaint letter, Mentor points out she does not mention her race, ethnicity or other protected characteristic and fails to allege any discrimination.[64] Hanzer counters that McGee and Bailey were aware of her protected class status and she communicated she felt she was treated unfairly in a call to Bailey as well as the aforementioned complaint letter.[65] Although Hanzer alleges retaliation under Title VII, she failed to engage in a protected activity under Title VII. Specifically, Hanzer failed to point to an instance where she complained of discrimination based on her protected status. A review her complaint letter to McGee provides no indication of any allegation or concern of discrimination.[66] In her letter, she starts out apologizing for overstepping her bounds and continues by discussing her

---

[60] *Id.* at 522.
[61] *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 287-88 (3d Cir. 2001); *see also* 42 U.S.C. § 2000e-3.
[62] *Id.*
[63] D.I. 102 at 21.
[64] *Id.*
[65] D.I. 108 at 21.
[66] D.I. 103, Ex. C.

actions to address issues at the houses, including running out of food and toilet paper. She indicates she discovered issues such as expired food and unsanitary conditions. Further, Hanzer discusses staffing issues and closes the letter by again apologizing. No complaint or suggestion of discrimination, harrassment or other mistreatment is made.

Hanzer also indicates she told Bailey she felt she was being discriminated against in a phone conversation on January 25, 2010 as follows:[67]

> Q: What did you tell her?
>
> A: I told her what was happened and that I feel that she was mistreating me, and I told her that I feel it was unfair.
>
> Q: Did you tell her that you thought you were being treated discriminatorily because you refused to falsify documents back in November of 2009?
>
> A: I told her I think I've been treated discriminatory because I not doing everything they're asking me to do that is against the law.
>
> Q: Did you specifically mention the incident in November 2009?
>
> A: No, I did not specifically mention to them that.
>
> Q: Did you specifically mention that you thought you were being treated unfairly because of your race or ethnicity or skin color?
>
> A: I do tell her -- I don't recall I say that to her. But I do recall I told her I was being treated different, I've been humiliated because I've been refused to sign documentation, and I file a complaint.[68]

Examining the testimony, Hanzer admits she felt the basis for her perceived mistreatment was her refusal to sign the PSRs and failure to complete her work assignments. Although she alleges she reported possible discrimination, the testimony

---

[67] D.I. 108 at 21-22.
[68] D.I. 109, Ex. B (referring to her complaint letter discussed above).

clearly indicates she did not claim discrimination based on a protected characteristic. Even viewing these facts in the light most favorable to Hanzer, this does not qualify as a protected activity under Title VII. Further, the treatment she complained of occurred prior to the report and she admits the basis was her performance and refusal to sign the PSRs. Although she may claim her response to the PSRs is a protected activity, this is not the type of activity protected by Title VII; rather Title VII protects an employee from retaliation after a complaint or indication of discrimination.

### E. Delaware Whistleblowers' Act

The Delaware Whistleblowers' Protection Act ("WPA") provides protection against wrongful discharge to an employee who refuses to aid or commit a violation or reports the violation to the employer or a public body.[69] For purposes of the statute, a violation includes "an act or omission by an employer . . . that is: . . . (b) [m]aterially inconsistent with, and a serious deviation from, financial management or accounting standards implemented pursuant to a rule or regulation" of the employer or by law.[70] Under the Act, a plaintiff bears the burden of establishing her protected conduct was the primary basis for the retaliation.[71]

Mentor contends Hanzer's WPA claim cannot survive summary judgment because she fails to identify a law or rule that was or would have been violated and cannot show her reporting of the defective PSR was the primary basis for her termination.[72] Specifically, Mentor propounds Hanzer does not point to a rule or statute

---

[69] 19 *Del. C.* § 1703.
[70] 19 *Del. C.* § 1702(6).
[71] 19 *Del. C.* § 1708.
[72] D.I. 102 at 22-25.

as the basis for considering the events surrounding the PSR discrepancies to be a violation or potential violation.[73] Mentor characterizes what was asked of Hanzer as signing corrected PSRs, and even if Hanzer was expected to reimburse the accounts with her own money, this is not a violation.[74] Mentor also argues Hanzer's Title VII retaliation claim undercuts her WPA retaliation claim as they are alternative grounds for recovery, and demonstrate she does not believe the primary basis for termination was her protected conduct under the WPA.[75] Hanzer counters that she believed both signing the PSRs and replacing the missing funds with her own money were violations, and points to the criminal prosecution of the former employee who misused funds as supporting evidence.[76] Hanzer claims she believed McGee would not report the violations to the State if she reimbursed the account herself and, thus, refused to comply with her employer's requests.[77] Hanzer also argues she may state both Title VII and WPA claims for retaliation and that, under *Town of Cheswold v. Vann*, even where just cause for termination exists, whether conduct protected by the WPA was the primary basis for the termination is an issue of fact for the jury.[78]

Mentor correctly points out Hanzer has failed to point to any statute, rule or regulation rendering the signing of corrected PSRs or using her own funds to reimburse shortfalls are violations under the WPA. Whether Hanzer believed such conduct was violative is irrelevant to the analysis as the statute requires the violation to be based on

---

[73] *Id.* at 24.
[74] *Id.* at 23-24.
[75] *Id.* at 24-25.
[76] D.I. 108 at 23.
[77] *Id.* Hanzer fails to provide any bases for her "belief."
[78] *Id.* at 23-24; 9 A.3d 467 (Del. 2010).

a rule, regulation or law. The mere fact that a former employee was criminally prosecuted does not, without more, indicate that the conduct requested of Hanzer itself was a violation of any statute, rule or regulation. The criminal conduct of which the employee was convicted was related to stealing money from client accounts while Hanzer contends she was asked to sign off on corrected PSRs and allegedly replace the funds with her own money. The two are not equivalent nor logically related in terms of the Whistleblower Statute. Even viewing the facts in the light most favorable to Hanzer, there simply is not enough to support a claim that she was asked to commit violations. Further, Hanzer's reliance on *Cheswold* is misplaced. In *Cheswold*, the court held the question of whether the protected conduct was the primary basis for the termination was a proper issue for the jury despite a prior finding of just cause, but the analysis involved issue preclusion and did not assess whether there was sufficient evidence for the plaintiff to meet his burden under the WPA.[79] Thus, while Hanzer is not precluded from raising WPA claims even if her termination may have been justified, she must still present sufficient evidence of a genuine issue of material fact, but has not done so. Therefore, Hanzer's WPA claim cannot survive summary judgment.

In addition, under 28 U.S.C. § 1367(a), this court may exercise supplemental jurisdiction over state law claims, such as Hanzer's WPA claims, if the court has original jurisdiction based on a federal question. Title VII claims, based on federal law, clearly confer jurisdiction upon the court, however, in the absence of these claims, the court

---

[79] *Cheswold*, 9 A.3d at 471-72.

may choose not to exercise supplemental jurisdiction over state law claims.[80] In light of the disposition of Hanzer's Title VII claims, the court should not exercise jurisdiction over her WPA claim.

### X. Order and Recommended Disposition

Consistent with the findings contained in this Report and Recommendation,

IT IS RECOMMENDED that defendant's motion for summary judgment (D.I. 101) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(a) and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen days after being served with a copy of this Report and Recommendation. The objections and response to the objections are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

April 10, 2014                    /s/ Mary Pat Thynge
                                  UNITED STATES MAGISTRATE JUDGE

---

[80] 28 U.S.C. § 1367(c)(3) ("[t]he district court may decline to exercise supplemental jurisdiction over a claim . . . if: . . . (3) the district court has dismissed all claims over which it has original jurisdiction.").